PRUDENCE E. STILLMAN *et al.* v. HENRY T. HAMER,
*as Sheriff, etc., et al.*

No. 13,821.  ( 78 Pac. 836.)

SYLLABUS BY THE COURT.

1. ATTACHMENT—*Purchaser Pendente Lite.*  A purchaser of land with notice of an attachment lien thereon takes it subject to such lien, and occupies no better position to contest the validity of the lien than the grantor would have had.

2. ——— *Abandonment of Lien.*  The law does not favor abandonments, and before an attachment lien will be deemed to have been abandoned some affirmative act or conduct of the creditor must be shown which is clearly inconsistent with the continuance of the lien.

3. ——— *Duration of Lien.*  In the absence of a statutory provision regulating the continuance of an attachment lien, which has been confirmed in a judgment, the duration of the lien is the duration of the judgment itself.

4. ——— *Irregular Return of Writ.*  An omission from a return of an order of attachment as to whether a copy of the same was left with an occupant is an irregularity, not a fatal defect, and therefore not available to a purchaser, in a collateral attack.

Error from Morris district court; OSCAR L. MOORE, judge.  Opinion filed December 1, 1904.  Affirmed.

*Nicholson & Pirtle,* and *Herrick & Allen,* for plaintiffs in error.

*J. K. Owens,* for defendants in error.

The opinion of the court was delivered by

JOHNSTON, C. J. : This was a suit by Prudence E. Stillman to enjoin the sale of lands in Morris county under orders of sale based on two judgments rendered by the district court of Miami county in favor of the First National Bank of Paola.  The actions were begun by the bank in April, 1896—one against Samuel E. Stillman, and S. R. Stillman, for $2229.67, and the

other against Samuel E. Stillman, Ray Stillman, and S. R. Stillman, for $587.57. Orders of attachment were issued in each case, directed to the sheriff of Morris county, which were received by that officer, and on April 22, 1896, were levied upon the land in question, then owned by S. R. Stillman. On July 16, 1896, judgment was rendered in favor of the bank in the first case for $2229.67, and in it the attachment was confirmed, and it was decreed that the attached lands should be sold and the proceeds applied to the payment of the judgment. Later, a judgment was rendered in the second case, and like orders as to the attached land were made. On July 25, 1896, and after the above-mentioned judgment had been rendered, S. R. Stillman conveyed the attached land to his wife, Prudence E. Stillman, for the specified consideration of $7000, "subject to a mortgage of $4000, and a judgment for $3000."

Orders of sale were issued on the judgments in August and October, 1896, which were returned unsatisfied by the direction of the judgment creditor. Certified transcripts of the judgments were filed in the district court of Morris county on December 23, 1896, and on April 10, 1901, executions were issued and levied upon the land in question; but a sale under the executions was not made because a suit to enjoin it was begun by the plaintiff, which she dismissed before the application for injunction was finally heard, and the executions were returned unsatisfied. In June, 1902, other orders of sale were issued, which the sheriff was proceeding to execute when the present suit in injunction was begun. It appears that in October, 1896, the Bradford Belting Company obtained a judgment against Stillman, and in May, 1899, an execution was issued and levied on the land,

Stillman v. Hamer.

under which the land was sold to the belting company. The sale was made subject to the redemption law, and before the expiration of the period of redemption the belting company assigned the certificates of purchase to Prudence E. Stillman, the plaintiff herein, and subsequently a sheriff's deed was issued to her.

She claims that the belting company acquired a paramount lien on the property under its judgment, and that by assignment she has succeeded to the rights of that company. The trial court rightly rejected her claim. The judgment of the belting company against S. R. Stillman did not operate as a lien upon the land in question, for the reason that the title had entirely passed from him months before the judgment was rendered. The judgment against him was no more than a general lien from the first day of the term at which it was rendered, on the real estate then owned by him. The judgment, as has been seen, was rendered at the Octobor, 1896, term of the court, and the complete title had passed from him to his wife on July 25, 1896, which was after the attachment liens in favor of the bank had been perfected by judgment. She is, therefore, not in the position of a lien-holder, and hence the rules invoked governing contests between lien-holders do not apply. She took the title to the lands subject to existing liens thereon, and in the deed of conveyance there is specific recognition of judgments against the lands to the extent of $3000, and that amount is about the sum of the two judgments in favor of the bank in the attachment cases. By the conveyance the plaintiff was placed in the position of her husband, and she has no more nor any better rights in contesting the bank's liens than he would have had. The levies of the attachments at the commencement

of the actions created contingent liens, which were perfected when the judgments were rendered. The validity of the liens was then adjudicated, and after that time neither the conveyance of Stillman nor any other act of his could destroy the liens, or lessen the rights of the bank. His wife, who occupies the same position, took her title to the lands with knowledge of the attachments, and holds subject to the liens which matured in the judgments.

The claim that the liens were abandoned, forfeited or lost by delay, or by the return of the orders of sale and executions unsatisfied at the instance of the bank, is not good. In the absence of some affirmative act of surrender or abandonment the attachment lien on land, when confirmed in a judgment, will ordinarily endure as long as the judgment itself. Our statute places no limit on the duration of an attachment lien, as is the case in some of the states. Of course, the attachment will be discharged and the lien lost if judgment be given for the defendant, but its confirmation in a judgment perpetuates the lien, and while it is in a sense merged in the judgment its priority is preserved, and so far as the specific land attached is concerned it relates back to the lien of the attachment. The lien will be lost if the lien of the judgment be allowed to expire by limitation, but since we have no express enactments regulating the continuance of an attachment lien no reason is seen why the duration of the lien should not be the duration of the judgment in which it is perfected. (*Floyd v. Sellers*, 7 Colo. App. 498, 44 Pac. 376; 4 Cyc. 625.) The fact that at the instance of the bank some of the orders of sale were returned unsatisfied does not show an abandonment of the lien acquired in the proceedings. The law does not favor abandonment or forfeiture, nor are they to

be lightly presumed.   Before an attachment lien will be deemed to have been abandoned there must be some affirmative act or conduct of the creditor inconsistent with the continuance of the lien.   (*Wright v. Westheimer*, 3 Idaho, 232, 28 Pac. 430 ; 4 Cyc. 630.)   The cause of the return of the orders of sale unsatisfied is not fully explained, but the efforts of the plaintiff and her husband to defeat the claims and liens of the bank suggest that their interference and obstructions may have prevented the sales and afforded reasons for such returns.   At any rate, the persistent efforts of the bank to enforce its liens discloses no purpose to waive or abandon them, and we think there was no abandonment.

It is next contended that the returns of the sheriff in the attachment cases were fatally defective because they failed to show that copies of the orders of attachment were left with the occupant, or, in case there was no occupant, that they were left in a conspicuous place on the premises.   No mention is made in the returns as to leaving copies of orders with an occupant or upon the attached premises, but that is no longer a material matter.   Personal service was made upon Stillman, and hence he was fully informed as to the attachment.   More than that, he appeared generally in that action and contested the validity of the attachment upon other grounds than the defect in question, and hence he is not in a position to challenge the service of the orders in this collateral way ; and his wife occupies no better position.   The omission of any statement as to what was done in respect to leaving the copies of the orders does not overcome the presumption that the officer did his duty in the premises.   If the sufficiency of the return had been attacked in the attachment action it might have been

amended so as to have shown the leaving of the order, if that was the fact. If omitted entirely it was a mere irregularity, not a fatal defect, and therefore not available to the plaintiff in this collateral way. (*Wilkins v. Tourtellott*, 28 Kan. 825; *Head v. Daniels*, 38 id. 1, 15 Pac. 911.)

The mortgage lien of the insurance company was subject and subordinate to those of the bank.

We find no error in the record, and the judgment is therefore affirmed.

All the Justices concurring.