## FLOYD ET AL. v. SELLERS.

1. EXECUTION SALES—SUBSEQUENT LIENS.

A sale of land under execution destroys all liens subsequent to the judgment upon which the execution was issued, or that which it is used to enforce.

2. REDEMPTION BY JUDGMENT DEBTOR.

If property sold under execution be redeemed by the judgment debtor, subsequent liens extinguished by the sale revive and reattach in their proper order.

3. REDEMPTION BY JUDGMENT CREDITOR.

The effect of a redemption from a sale under execution by a judgment creditor is the revival of his own lien. Other such liens which were extinguished by the sale remain extinct, notwithstanding they may have been superior to his in point of time. Such lien holders can take no advantage by reason of his redemption except by complying with the statute permitting them to redeem.

4. ATTACHMENT LIEN, DURATION OF.

An attachment lien upon real estate continues for six years where the creditor secures no judgment lien by the filing of a transcript of the judgment docket.

5. MERGER—RELATION.

An attachment lien merges in that of the judgment when a judgment lien is acquired, but the latter relates back to the date of the former.

*Appeal from the District Court of Boulder County.*

Mr. J. R. ZUVER, for appellants.

Messrs. ADAMS & ADAMS, for appellee.

THOMSON, J., delivered the opinion of the court.

This is an action by John A. Sellers against Charles O. Floyd, J. M. Beach and Lewis L. Wadsworth, to quiet the

title of the plaintiff in the Empress lode against claims set up by the defendants to the same property. The record discloses that the real defendant is Floyd, and that the others were made parties principally for the purposes of a temporary injunction. The complaint alleges title in the plaintiff, by virtue of a sheriff's sale and conveyance under a judgment recovered by Elson S. Bishop against Samuel Cochran and The Boston and Colorado Gold and Silver Mining Company, and avers that Floyd claims to be the owner of the property, by virtue of a sheriff's deed executed pursuant to a sale under a judgment in his own favor against the same parties, from which sale the property was redeemed by Cochran within the statutory period, and before execution of the deed to Floyd. The facts concerning the execution of both deeds and the redemption by Cochran, will be found in *Floyd v. Sellers ante*, p. 491. We there held the deed to Sellers good, and that to Floyd inoperative and invalid ; and if the questions considered in that case were the only ones involved in this, our duty would be confined to a reiteration of that decision. In that case Floyd, as plaintiff, sought the annulment of Cochran's redemption, and the affirmance of his own title ; and Sellers, having caused himself to be made a party defendant, filed an answer, and also a cross complaint praying a decree sustaining his title. At the hearing the court dismissed his cross complaint without prejudice, giving judgment generally against Floyd ; and this complaint is substantially that cross complaint, as the foundation of an original proceeding. The prayer here is that the title of the plaintiff be adjudged good and valid, and that the defendants be forever barred from asserting any right or interest in the property. There was a decree in accordance with the prayer, from which the defendants have appealed.

The answer of Floyd, in addition to the matters set forth in his complaint in the former action, averred the ownership by him of certain judgments recovered against The Boston and Colorado Gold and Silver Mining Company, which, either by virtue of attachments duly levied, or by virtue of

transcripts filed with the recorder, were liens upon the land, and which were averred to be wholly unsatisfied. The case was submitted upon certain stipulated facts, among which are the following:

" That on the 6th day of July, 1892, Whitney & Metcalf commenced an action by attachment against The Boston and Colorado Gold and Silver Mining Company, the sole and only record title owner of the property in controversy, and upon said day and year had an attachment duly issued and levied upon said property, and said levy duly filed with the county clerk and recorder of Boulder county, Colorado; that on the 8th day of October, A. D. 1892, said Whitney & Metcalf duly recovered a judgment in said action in the county court of Boulder county, Colorado, sustaining said attachment, and for $193.25 and $33.49 costs of suit. That on the 20th day of November, 1894, said Whitney & Metcalf, for a valuable consideration, duly sold and assigned said judgment to Charles O. Floyd, a defendant herein; that said judgment now remains in full force and effect and is wholly unsatisfied, and no execution has ever been issued upon said judgment.

" That on the 26th day of August, 1892, the defendant herein, Charles O. Floyd, duly recovered a judgment of the county court of Boulder county, Colorado, against The Boston and Colorado Gold and Silver Mining Company for $682 and $31.80 costs. That on the 29th day of August, 1892, he filed a transcript of said judgment in the office of the county clerk and recorder of Boulder county, Colorado; that said judgment now remains in full force and is wholly unsatisfied except as satisfied by a sale of the property in controversy on the 8th day of December, A. D. 1894, under an execution duly issued thereon.

" That on the 10th day of October, 1892, the defendant herein, Charles O. Floyd, duly recovered a judgment of the county court of Boulder county, Colorado, against The Boston and Colorado Gold and Silver Mining Company for $281.30 and costs taxed at $14.10; that on the 12th day of

October, 1892, he duly filed a transcript of said judgment in the office of the county clerk and recorder of Boulder county, Colorado; that said judgment is now in full force and wholly unsatisfied except by a sale of the property in controversy upon the 8th day of December, 1894, upon an execution duly issued thereon.

" That on the 18th day of March, 1892, the First National Bank of Boulder, Colorado, commenced an action by attachment against The Boston and Colorado Gold and Silver Mining Company, the sole and only record title owner of the property in controversy, and upon said day and year had a writ of attachment duly issued therein and duly levied upon the property in controversy, and upon said 18th day of March, 1892, had said levy duly recorded in the office of the county clerk and recorder of Boulder county, Colorado. That on the 30th day of July, 1892, a judgment of the county court of Boulder county, Colorado, was duly rendered therein, sustaining said attachment, and for $712.08 and $58.95 costs; that immediately after the rendition of said judgment said First National Bank, for a valuable consideration, duly sold and assigned said judgment to Charles O. Floyd, one of the defendants herein; that said judgment now remains in full force and effect and is wholly unsatisfied, except as it was satisfied by a sale of the property in controversy on the 8th day of December, 1894, under an execution duly issued thereon."

The court, after making certain findings of law, decreed that the defendants and each of them be forever barred from all claim to any right, title, interest or estate in the Empress lode mining claim, and adjudged that they had no right, title, interest or estate whatever in or to the premises, and that the title of the plaintiff was good and valid. In the findings the judgments held by Floyd, and their effect upon the plaintiff's title, were entirely ignored, possibly because the court regarded them as without significance. Why they did not receive mention we have no means of knowing, and are unable to conjecture.

There is a curious and unexplained silence in the record concerning facts, a knowledge of which is necessary to a determination of the rights to which Floyd's ownership of the judgments entitles him. The effect of the decree is to cut him off, absolutely and forever, from any claim upon the property by virtue of his judgments; but if the liens of these judgments, or any of them, were prior and paramount to the lien through which the title of the plaintiff was derived, the decree is inequitable and unjust.

It is disclosed by the record in the former suit that the plaintiff in this, in an action against Cochran and the Mining Company, levied an attachment on the real estate in controversy; that the attachment was sustained, and that he recovered judgment against both defendants, upon which execution was issued and the property sold; that Bishop, a subsequent judgment creditor, effected a redemption from that sale, and caused the property to be sold to satisfy his own judgment, being himself the purchaser for the amount of the redemption money and interest, and transferred to the plaintiff his right to receive the deed to be executed pursuant to the sale. The deed was accordingly executed to the plaintiff. This is the deed under which the plaintiff claims. If the lien of the attachment by Sellers was prior to the liens which Floyd claims to hold, the latter were extinguished by the sale. The effect of a sale of land on execution is to destroy all liens which are subsequent to the lien of the judgment upon which the execution was issued, or that which it was used to enforce. If the property is redeemed from the sale by the judgment debtor, the title revests in him, and the extinct liens are revived, and reattach in their proper order. But a redemption is allowed to a judgment creditor, whose judgment lien is subsequent to that under which the sale is made, for the purpose of enabling him to obtain satisfaction of his own judgment. He must sue out an execution upon his judgment and place it in the hands of the proper officer, who shall thereupon indorse upon it a levy upon the land to be redeemed. He must then pay to

the officer the amount of money for which the land was sold with ten per cent per annum interest, and the property must be advertised and offered for sale by virtue of his execution. At the sale he is considered as having bid the amount of the redemption money, and interest from the date of the redemption. If no higher bid is made, the land is struck off and sold to him, and in that case no other redemption is allowed. General Statutes, secs. 1852, 1853.

The purpose for which a judgment creditor is permitted to redeem limits the effect of his redemption to a revival of his own judgment lien. The others which were extinguished by the sale, remain extinct; and notwithstanding they may have been superior to his in point of time, the holders, not having availed themselves of the provisions of the statute permitting them to redeem, can claim no advantage by reason of his redemption; and if the property is struck off to him for the amount of the redemption money and interest, he takes the title discharged from the liens of the prior judgments, and subject to no further redemption. If, therefore, Sellers acquired his attachment lien before the liens of these judgments were perfected, the redemption by Bishop from the sale under Sellers' judgment, the subsequent sale under his own judgment for the amount of the redemption money and interest, the transfer of his purchase to Sellers, and the execution of the deed to the latter, operated to vest in Sellers a perfect title as against the judgments in question.

But while the record in the former case recites the fact of the levy of Sellers' attachment, it does not show when it was either issued or levied, and this record does not even refer to the attachment. The dates of the recovery of the Sellers and Bishop judgments, and the fact of the redemption by Bishop, are given in the complaint and are not controverted by the answer; but there is nothing in the complaint, or in the agreed statement, to show that Sellers had any lien upon the property prior to the recovery of his judgment, or that even the judgment itself was ever made a lien. As that judgment was not recovered until the 6th day of February, 1893,

it is manifest that each of the liens agreed upon, as being held by Floyd, was prior and superior to any lien which could have been acquired by virtue of the Sellers' judgment; and that therefore, if the only lien which Sellers had was acquired in pursuance of his judgment, he took the title subject to the liens of Floyd, and still holds it subject to them, unless for some reason Floyd has lost the right to assert them.    Two of the judgments were recovered by Floyd in his own name against the Mining Company, transcripts of which were filed in the office of the recorder of the proper county,—one on August 29, 1892, and the other on October 12, 1892, and upon those dates the judgments respectively became liens upon the real estate of the judgment defendant in that county. The period of the life of a lien thus acquired is six years from entry of judgment.    Session Laws, 1891, p. 246.

These judgments were liens upon the property in question to the extent of the judgment defendant's interest in it at the time Sellers recovered his judgment; and unless the latter held the property by an attachment in his suit levied and made a lien prior to the liens of these judgments, the latter were valid and subsisting liens at the time of the rendition of this decree, and a decision that the plaintiff had a perfect title to the property, and that Floyd had no interest in the premises, notwithstanding these judgment liens, cannot be upheld.

Two of the judgments agreed upon, one in favor of Whitney & Metcalf, and the other in favor of the First National Bank of Boulder, never became liens as judgments.    The necessary transcripts were not filed.    The suits were commenced by attachment, and the only liens which the judgments could be used to enforce were the attachment liens. On the Whitney & Metcalf judgment no execution was ever issued.    On that of the bank an execution was issued by virtue of which a sale was had on December 8, 1894, but it must have been issued more than two years after the judgment was entered.    While the time a judgment lien shall continue after it has been perfected is fixed by law, there is

no provision concerning the duration of a lien by an attachment. It is contended for the plaintiff that where the judgment itself is not made a lien, the lien of the attachment can be preserved only by the issue, within a reasonable time, of an execution upon the judgment; that two years is not a reasonable time; that therefore in the bank case the attachment lien had expired before execution issued, and that in the Whitney & Metcalf case it had expired because no execution was ever issued. The question which counsel raises was the subject of some discussion by Helm, J., in his opinion delivered in the case of *Emery v. Yount,* 7 Colo. 107, in the course of which he said: "We do not decide how long this attachment lien upon realty would hold good, nor how soon the attachment creditor should move to subject the property to the satisfaction of his judgment. When a transcript of the judgment docket is filed with the recorder, the lien secured is good for six years, whether execution issue or not. And it may be that in cases like this, where the creditor secures no judgment lien upon all the debtor's realty, his attachment lien upon a specific portion thereof would be held to survive for the same period. * * * Plaintiff's attachment lien did not merge because she never filed a transcript of the judgment docket, and never acquired a judgment lien. It is still in force, and she is entitled to the benefit thereof. No hardship will result in other cases from the application of the rule we thus recognize and adopt, for by our statute an attachment of realty is secured by the sheriff's filing with the county recorder a copy of the writ and description of the property attached; and this record is notice to all the world of the attachment lien acquired thereby; it informs parties dealing with the debtor of the creditor's claim upon the property, quite as effectively as does the filing of a transcript of the judgment docket."

The question, however, was not decided, because the facts of the case did not make its decision necessary; but the observations of the learned judge are at least suggestive. In the case of attachment of personal property, there are reasons

why the attachment plaintiff should be held to some degree of deligence after judgment in subjecting the property attached to the payment of his claim which have no force in the case of attachment of real property. The difference in the nature of the two kinds of property makes the justice of this observation apparent. When a transcript of the judgment is filed with the recorder, it becomes a lien upon all the real estate of the judgment defendant situated in the county, for six years from the rendition of the judgment. The lien of the attachment becomes merged in that of the judgment, but its priority is preserved, and the lien of the judgment, in so far as the specific real estate attached is concerned, relates back to the lien of the attachment. Formerly the law was that in order to preserve the judgment lien, execution must be issued within one year; and in *Speelman v. Chaffee*, 5 Colo. 247, decided while this law was in force, it was at least intimated that the statute would be the proper guide in determining the question of diligence on the part of an attaching creditor in enforcing, after judgment, the lien of his attachment. That is not the law now, and was not when any of these judgments were recovered, or attachments issued; but the intimation is not without value, nevertheless. As the law now stands, the lien of a judgment continues for six years whether an execution be issued or not. An attachment becomes a lien by filing with the county recorder a copy of the writ and a description of the property attached. The lien of a judgment upon all of the judgment debtor's real estate in the county is acquired by filing a transcript of the docket entry with the recorder. Both records are equally notice to the world of the liens acquired, and there is no reason why a greater degree of diligence should be exacted from a judgment creditor whose only lien is that of his attachment, than is required by the statute in the enforcement of the lien of a judgment. In the latter case six years are allowed, and we can perceive no distinction between the two classes of liens which would make a shorter time negligence, where the lien is that of an attachment and not of a judgment.

But there is one of these judgments which is not entitled to consideration in this case. It is the one in favor of Whitney & Metcalf. That judgment did not become the property of Floyd until November 20, 1894. This action was commenced November 5, 1894. Floyd purchased the judgment a considerable time after suit was brought, and probably did so for the sole purpose of interposing it as a defense. The condition of the plaintiff's title at the time of the commencement of the action, and the claims of the defendants against the property existing at the same time, presented the only questions to be determined in the case. The plaintiff sought the quieting of his own title against hostile claims then made by the defendants, particularly Floyd; and the latter could not defeat the action by buying in outstanding titles or incumbrances after its commencement.

Whether the plaintiff is entitled to the relief prayed depends entirely upon the date of the inception of Sellers' attachment lien, concerning which the record conveys no information. As the record stands the decree was erroneous, and will be reversed, with leave to the parties to amend their pleadings as they may be advised.

*Reversed.*