Argued 3 April, decided 12 June, 1906.

## KATZ v. OBENCHAIN.

85 Pac. 617.

ATTACHMENT LIEN—DURATION—NEED OF DOCKETING JUDGMENT.

1. Under Section 301, B. & C. Comp., providing how an attachment shall be levied on real property, and Section 303, providing that attachment notices shall be recorded and that thereupon "the lien in favor of plaintiff shall immediately attach to such real property," the lien of an attachment clings to real property until the debt is paid or the property is sold under an execution pursuant to a judgment in the case, or the judgment or attachment is released in some manner provided by law, and the lien is not affected by a failure to properly docket the judgment, when recovered.

VALIDITY OF UNDOCKETED JUDGMENT—EXECUTION.

2. The validity of a judgment is not at all dependent upon its being docketed, nor is an execution regularly issued on a judgment affected by a failure to properly docket.

EFFECT OF DOCKETING JUDGMENT—ATTACHMENT LIEN.

3. The effect of properly entering a judgment in a legal docket is to create thereby a lien on the unattached real property of the judgment debtor. Where, however, the judgment is merely entered in the court record without being docketed, the attachment lien remains unaffected.

JUDGMENT AGAINST NONRESIDENT—NATURE AND LIFE OF.

4. A judgment against a nonresident based on a service of summons by publication is valid as a judgment against the attached property only, which will continue to be enforcible so long as an execution may issue.

WAIVER OF JUDGMENT LIEN BY NONENFORCEMENT.

5. In the absence of a showing of authority or intent a direction of an attorney to an officer not to sell under an execution writ certain real property on which his client had a lien cannot be considered a waiver of the lien.

MERGER—MORTGAGE AND SUBSEQUENT JUDGMENT.

6. Mergers are not favorites of equity and conflicting interests will not be considered united, in the absence of an expressed intention, where justice will be promoted by keeping them separate.

For example: Where a mortgagee acquires by deed the legal title to the mortgaged property after a subsequent lien has attached thereto, but without knowledge of that fact, equity will keep the estates separate for the protection of the mortgagee.

LIMITATION OF SUIT TO REMOVE CLOUD OR QUIET TITLE.

7. A suit to quiet title is not subject to any statute of limitations, for there is no date from which the period of limitation can be computed, as the adverse claiming is continuous.

For illustration: Where the holder of a mortgage acquires the title to and the possession of the premises without a foreclosure, after an attachment lien has accrued, a suit by him to enjoin a sale under the attachment is properly a suit to quiet his title, rather than to foreclose the mortgage, and is not affected by the statute limiting the right to sue on sealed instruments: B. & C. Comp. § 5, Subd. 2.

EQUITY—EFFECT OF GENERAL PRAYER FOR RELIEF.

8. In entering a final decree a court of equity may grant all the relief proper to be awarded under the facts proved and the law applicable thereto, under a prayer for general relief, regardless of the specific prayers.

From Klamath: HENRY L. BENSON, Judge.

Statement by MR. CHIEF JUSTICE BEAN.

This is a suit for an injunction and general equitable relief by Israel Katz against Silas Obenchain, as sheriff, and others.

On December 8, 1892, Quincy A. Brooks and wife mortgaged blocks 71, 72, 73, 86 and 87, in Klamath Falls, to the plaintiff to secure the payment of a promissory note for $1,250 due one year after date, and bearing interest at 10 per cent per annum, and such mortgage was duly recorded on December 16, 1892. Brooks and wife were at the time and continued thereafter to be nonresidents of the State. On July 21, 1894, one Meyer commenced an action at law against them in the circuit court for Klamath County to recover money and caused the property included in the plaintiff's mortgage, together with a large amount of other real property belonging to them in that county, to be attached to satisfy any judgment he might recover. Thereafter service was had by publication upon Brooks and wife, and on November 20, 1894, Meyer recovered a judgment against them for $5,727.75 and costs, and an order adjudging and directing the sale of the attached property to satisfy the same. This judgment was immediately entered in what was used as the judgment lien docket, but was insufficient to create a lien because it did not show the time when docketed: *Hutchinson* v. *Gorham*, 37 Or. 347 (61 Pac. 431) ; *Western Sav. Co.* v. *Currey*, 39 Or. 407 (65 Pac. 360, 87 Am. St. Rep. 660). Soon after the rendition of the judgment an appeal was taken to this court, pending which Brooks and wife conveyed the mortgaged property to one E. C. Brooks. The Meyer judgment was subsequently affirmed, except in so far as it was a personal one against Brooks and wife: 29 Or. 203. The mandate was entered in the court below on November 18, 1896, and the judgment again entered in the pretended judgment lien docket. On April 12, 1897, an execution and order of sale were issued thereon and all the attached property sold thereunder except that included within the plaintiff's mortgage. On May 30, 1898, E. C. Brooks and wife, in consideration of the payment to them of

(48th Or.—23)

$500 in money by the plaintiff, and the release by him of
Quincy A. Brooks and wife from any liability on their note and
mortgage, conveyed the mortgaged property to the plaintiff and
he is now and has ever since been the owner thereof.

On February 1, 1905, an alias execution was issued on the
Meyer judgment, and the property conveyed by E. C. Brooks
and wife to plaintiff seized and advertised for sale, when this
suit was commenced by plaintiff to enjoin such sale. In his
complaint he sets out in detail the giving of the mortgage to
him by Brooks and wife and the recording of the same, alleges
that no part of the principal or interest has been paid, and that
on May 30, 1898, he demanded payment thereof, and thereupon
E. C. Brooks and wife conveyed the mortgaged property to
him in consideration of the payment to them of $500 and the
release of Quincy A. Brooks and wife from further liability on
such note and mortgage, and that such conveyance was
recorded on October 30, 1900; that at the time of
such conveyance E. C. Brooks was the owner in fee
of the property, and that plaintiff accepted the conveyance
from him and paid the consideration therefor in good faith,
without knowledge of any lien or incumbrance on the property,
and has ever since been in the peaceable and quiet possession
thereof, paying taxes thereon, and has either by himself or
through his tenants made valuable improvements to the extent
of more than $3,000; that the defendant sheriff has seized and
advertised the property for sale under the Meyer judgment,
and that neither Meyer nor any one else has a valid and sub-
sisting lien or claim on such property. The prayer is for an
injunction restraining the sale of such property, and for such
other and further relief as in equity may seem just.

The defendants answered jointly, admitting and denying the
allegations of the complaint, and for an affirmative defense
plead the Meyer judgment and the issuance of an execution
thereon and that plaintiff's mortgage is barred by the statute of
limitations. The reply puts in issue the averments of the an-
swer, and affirmatively alleges that the lien of the attachment

and judgment in the action of Meyer against Brooks, so far as it affected the property now in controversy, was abandoned at the·time the execution was issued on the judgment in 1897, because the attorney for Meyer then directed the sheriff not to sell such property for the reason that it was of less value than the amount due the plaintiff on his mortgage.· A decree was rendered in favor of the plaintiff as prayed for in the complaint, and the defendants appeal.                          REVERSED.

For appellants there was a brief over the names of *F. H. Mills* and *A. L. Leavitt,* with an oral argument by *Mr. Mills.*

For respondent there was a brief and an oral argument by *Mr. J. C. Rutenic.*

MR. CHIEF JUSTICE BEAN delivered the opinion.

The important questions on this appeal are (1) whether the attachment lien in the action of *Meyer* v. *Brooks* was waived or lost by the failure to make a proper entry of the judgment in the judgment lien docket; and, if not, (2) whether the plaintiff's rights under his mortgage were, as against the subsequent lien of Meyer's attachment, merged in the legal title acquired by him through E. C. Brooks.

1. The statute provides that the sheriff's certificate of the attachment of real property shall be by such officer delivered to the county clerk of the county in which the attached property is situate (B. & C. Comp. § 301), and that such clerk shall immediately file the same in his office and record it in a book to be kept for that purpose, and thereupon "the lien in favor of the plaintiff shall immediately attach to such real property" described therein (B. & C. Comp. § 303), and that if judgment be recovered by the plaintiff, the court shall order and adjudge the attached property to be sold to satisfy plaintiff's demand: B. & C. Comp. § 309. The proceeding by attachment is, therefore, in the nature of a proceeding *in rem.* It is against the particular property. The attaching creditor thereby acquires a specific lien upon the attached property which ripens into a judgment against the *res* when the order of sale is made. Such

a proceeding is in effect a finding that the property attached is an indebted thing, and a virtual condemnation of it to pay the owner's debt. The statute does not provide the length of time an attachment lien shall continue after the rendition of the judgment, and it must therefore necessarily continue until the debt is paid, or sale is had under execution issued on the judgment, or until the judgment is satisfied, or the attachment discharged or vacated in some manner provided by law. The validity or continuation of an attachment lien is not made dependent upon the entry of the judgment in the judgment lien docket.

2. A levy and sale under an execution issued on a judgment may be made without the judgment being docketed at all.

3. A judgment itself, however, is no lien upon real property until docketed, but the lien acquired by an attachment remains and may be enforced, and the sheriff's certificate filed with the county clerk and recorded by him informs parties dealing with the debtor of the attaching creditor's claim upon the property as effectually as does the docketing of a judgment in the lien docket. It is optional with the creditor whether a judgment is docketed at all. If it is not properly entered in the judgment lien docket the creditor has no general lien on the real property of the defendant and the rights of *bona fide* purchasers and lien creditors subsequent to the judgment and prior to the seizure of property under execution issued thereon are in no way affected by the judgment. But the failure to docket the judgment does not waive or suspend the lien acquired by the previous attachment and order of sale.

4. In the case under consideration, there could have been no benefit to Meyer in entering the judgment in the judgment lien docket. The action brought by him was against a nonresident. There was, therefore, no personal judgment against the defendants, and it would not have become a general lien if it had been docketed. The only remedy of Meyer was against the specific property. His lien thereon was acquired by the attachment, and, in the absence of a statute to the contrary,

continued during the period an execution could issue on the
judgment: *Bank of California* v. *Cowan* (C. C.), 61 Fed. 871;
*Emery* v. *Yount,* 7 Colo. 107 (1 Pac. 686) ; *Floyd* v. *Sellers,*
7 Colo. App. 498 (44 Pac. 373) ; s. c., affirmed, 24 Colo. 484
(52 Pac. 674).

5. But, it is argued that Meyer waived and abandoned his
specific lien upon the property in controversy because his at-
torney directed the sheriff not to sell it under a previous exe-
cution.    The plaintiff had no knowledge of this fact at the time
he purchased the property and therefore could not invoke the
doctrine of estoppel as against Meyer.  Besides, there is no
proof that the attorney had authority to waive the lien, or that
he intended to do so.    The evidence is that he directed the prop-
erty not to be sold at that time because in his opinion it was
not then worth as much as the amount of plaintiff's mortgage,
and the costs and expenses of the sale could not have been real-
ized out of it.    We think, therefore, that Meyer's attachment
and judgment are still a valid and subsisting lien upon the
property and may be enforced by execution.

6. The remaining question is whether such attachment and
judgment take precedence over the prior mortgage of plaintiff
or rather whether such mortgage was merged in the legal title
acquired by him from E. C. Brooks, and was thereby satisfied.
Mergers are not favored in equity.  When a lesser and a higher
estate meet and coincide in the same person they will be kept
separate when equity and justice require it, unless there is
an expressed intention to the contrary.  "It is only in those
cases," says Mr. Justice LORD, in *Watson* v. *Dundee Mtg. & T. I.
Co.,* 12 Or. 474, 483 (8 Pac. 548, 553), "where it is perfectly
indifferent to the party in whom the interests had united
whether the charge or term should or should not subsist, that in
equity the term is merged.  But if the owner has an interest in
keeping them distinct, or there is an intervening right, there
will be no merger.  * * In the absence then of an express inten-
tion to the contrary, the intention to keep the two estates sepa-
rate will be implied and presumed, when it is for the interest of
the party that they should be kept separate. It will not do, then,

as was said by ELLIOTT, J., to assume, as a matter of course, that there was a merger, for there are many cases in which, in order to prevent injustice, courts will not allow merger to take place, although all the essential elements of a technical merger combine in the particular case." It is consequently said by Mr. Pomeroy that "where a mortgagee takes a conveyance of the land from the mortgagor or from the grantee of the mortgagor, if the transaction is fair, the presumption of an intention to keep the security alive is very strong. It is generally for the interests of the party in this position that the mortgage should not merge, but should be preserved to retain a priority over other encumbrances. As the mortgagee acquiring the land is not the debtor party bound to pay off either the mortgage or the other encumbrances on the land, there is nothing to prevent equity from carrying out his presumed intent, by decreeing against a merger": 2 Pomeroy, Equity (3 ed.), § 793.

Now, the mortgage of the plaintiff was prior in time and right to the lien of Meyer's attachment, and it was therefore manifestly to the interest of the plaintiff that it should not be extinguished as against any subsequent lien by the conveyance to him of the legal title to the mortgaged property, and as there was no express intention of a merger, a court of equity will, in order to prevent an injury to him, keep the two estates separate and distinct: *Watson* v. *Dundee Mtg. & T. I. Co.,* 12 Or. 474 (8 Pac. 548), and *Floyd* v. *Sellers,* 7 Colo. App. 498 (44 Pac. 373) ; s. c. 24 Colo. 424 (52 Pac. 674).

7. But, it is said the mortgage is now barred by the statute of limitation and cannot be foreclosed. This, however, is not strictly a proceeding to foreclose a mortgage, but rather a suit by the owner in fee of real property, who is in possession thereof, against one who is claiming or asserting some adverse claim or lien thereon, to have such right or claim determined, and is therefore not barred by the statute of limitation: *Meier* v. *Kelly,* 22 Or. 136 (29 Pac. 265).

8. Again, it is said that the plaintiff does not by the prayer of his complaint ask to have his mortgage restored as against

the Meyer judgment. The complaint sets up the facts out of which the equities in favor of the plaintiff arise and contains a general prayer for relief. This is sufficient to enable the court to award such a decree as the law and the facts afford: *Rutenic* v. *Hamaker*, 40 Or. 444 (67 Pac. 196).

The decree of the court below will, therefore, be reversed, and one entered here directing the sale of the property in controversy and the distribution of the proceeds among the several parties interested therein according to their rights as set out in this opinion.   REVERSED.

Decided 17 July, 1906.