Argued January 30, affirmed February 13, rehearing denied March 27, 1917.

# ROTH v. TROUTDALE LAND CO.*

(162 Pac. 1069.)

**Mortgages—Necessity of Assignment.**

1. Indorsement and transfer by mortgagee of promissory note secured by mortgage carries with it mortgage security without formal assignment of mortgage.

**Mortgages—Necessity of Assignment.**

2. Transfer by purchase-money mortgagees of three notes secured by the mortgage and the interest on the other one of two notes carried with it *pro rata* security of mortgage.

**Mortgages—Foreclosure—Right to Maintain.**

3. Transferee of notes secured by purchase-money mortgage had interest in subject of suit to foreclose, and under Section 393, L. O. L., permitting joinder of all persons interested, was properly plaintiff in foreclosure.

**Mortgages—Foreclosure—Misjoinder of Causes.**

4. Mortgage given as security for three notes, though notes were held by different persons, could be foreclosed as security for all notes in one suit without misjoinder.

**Mortgages—Mergers.**

5. Where purchase-money mortgagees assigned one of three notes secured by the mortgage, and the assignee advanced further moneys to the mortgagor, and obtained contracts of purchase, equity and good conscience require that the mortgage lien be kept alive *in toto*, since mergers are not favored in equity, and the assignee having obtained his right from the mortgagees is entitled to foreclosure.

> [As to merger of mortgage in the fee, see note in 99 **Am. St. Rep.** 160.]

---

*On proceeding to enforce mortgage as part of debt as affected by prior proceedings in matters of merger, see note in 37 **L. R. A.** 758.

                                        Reporter.

Mortgages—Foreclosure—Sale.

6.   Where purchaser of land, having given purchase-money mortgage, 'sold part of the land, and on foreclosure the land was divided' into two tracts corresponding to that sold and that retained, the mortgagor could not complain that in the first tract sold, being' that already conveyed by him, more land was included than should have been where the proceeds were less than the mortgage.

Mortgages—Foreclosure—Priority of Liens.

7.   Lien of lender to mortgagor for loan and interest advanced was properly postponed to the lien of the mortgagee under notes secured by the mortgage.

Appeal and Error—Scope.

8.   Effect of decree as to defendant who failed to appeal cannot be considered or changed.

From MULTNOMAH: CALVIN U. GANTENBEIN, Judge.

Henry Roth and Ulrich Michel, trustees, and Frank H. Brown brought a suit against the Troutdale Land Company, a corporation, Joseph Mossi and others. to foreclose a second mortgage on certain described lands in Multnomah County.   From a decree in favor of plaintiffs the named defendants appeal.

AFFIRMED.

Department 2.   Statement by MR. JUSTICE BEAN.

This is a suit to foreclose a second mortgage, dated September 5, 1910, given to secure three notes, one for $8,428.75, due on or before November 1, 1911, one for $8,000 due November 1, 1912, and one for $8,500 due November 1, 1913, all drawing six per cent interest, payable annually.   The mortgage in question was given on about 1,000 acres of land situated on the Columbia River fourteen miles east of Portland, Oregon, and was to secure the unpaid portion of the purchase price. The consideration paid for the land was about $57,000, $20,000 of which was paid in cash.   It was subject to a first mortgage of $12,500.   The balance was represented by the mortgage which is sought to be foreclosed.   The notes and mortgage were executed by the

Troutdale Land Company, a corporation organized by Joseph Mossi and J. D. Hamilton and wife, the latter holding only one share. The greater part of the land is low and is ordinarily submerged by the annual rise of the Columbia River. After it was purchased by the Troutdale Land Company from Roth, Michel and two others, who were conducting the same as a dairy ranch, Mossi and Hamilton conceived the idea of reclaiming the low land, by the construction of a dike around it so as to exclude the water, and selling it out in five and ten acre tracts for gardening purposes. In order to carry out this scheme, they conveyed to the Merchants' Savings & Trust Company, as trustee, about 900 acres of the land, including all the lowland and but little which did not overflow. As a part of the same transaction a declaration of trust was made and signed by the trustee, the Troutdale Land Company and the Garden Land Company. The latter, however, had no interest in the land. It was merely a selling agency whose duty it was to plat the land into suitable tracts and sell the same to customers at a minimum price of $175 an acre. The Garden Land Company made quite a number of such sales at about $300 an acre. The Troutdale Land Company was to clear and plow these tracts and also construct a dike around the land to exclude the flood water from the Columbia River. This continued until the fall of 1911, when the note for $8,428.75, secured by the mortgage, fell due. At that time the Troutdale Land Company was unable to meet it and the holders of the mortgage were then threatening foreclosure. About the month of December, 1911, Mossi and Hamilton, through one J. H. Kelly, solicited and induced plaintiff Frank H. Brown to purchase this note of the mortgagees, and also advance the accrued interest upon the remaining two notes of $8,000 and $8,500 up to Novem-

ber 1, 1911, with an arrangement that Brown, as assignee of the note, would be under the protection of and secured by the mortgage given to Roth and Michel as security for the note, and that for the interest amounting to $1,116.49 which he advanced to the latter men, he should also be secured by the mortgage and other collateral security which was to be given him at that time. By December, 1911, the Troutdale Land Company was not only unable to pay the note and interest on the mortgage for the purchase price of the land, but could not pay the Garden Land Company for the cost of platting it and the commissions on sales. As a result on January 6, 1912, at the time that Brown purchased the note in question and paid the interest, the Troutdale Land Company canceled the old trust agreement between it and the Merchants' Savings & Trust Company and executed a new one, in which was created what was known as the Loamy Land Acres Syndicate, the beneficial membership of which consisted of Mossi and Hamilton, the owners, J. H. Kelly, George N. Davis and W. D. Jellison. Kelly and Jellison were to be issued shares therein at par, sufficient to pay them what had been earned in commissions by the Garden Land Company. To George N. Davis was issued a certain number of shares to pay for legal services performed by him for the Troutdale Land Company and the Merchants' Savings & Trust Company, as trustee. The entire tract of land which had been theretofore conveyed to the latter company was then declared to be syndicated into 1,600 shares, of the par value of $160,000. Three hundred shares were issued to Joseph Mossi, the same number to J. D. Hamilton, 140 to the Garden Land Company, 45 to W. D. Jellison, 70 to J. H. Kelly, and 35 to George N. Davis, making a total of 890 shares. The remaining 710 were to be sold at par

and the proceeds held by the trustee as assets of the Syndicate, and used for improving the lands and the payment of the indebtedness against it, either mortgage or otherwise. It was also agreed that the Syndicate, which was an unincorporated body, should be managed by a committee consisting of Joseph Mossi, J. D. Hamilton, J. H. Kelly, Frank Brown and George N. Davis, a majority of whom should have full power to act in any and all matters touching the management of the Syndicate. Plaintiff Brown had no interest in the Syndicate, but was serving gratuitously along with Mossi and Hamilton, the principal owners, and the other members of the Syndicate who were their creditors. This second declaration of trust evidencing the creation of the Loamy Land Acres Syndicate was executed on January 6, 1912, contemporaneously with the purchase by Brown of the note in question and the advancement by him of the interest upon the other two notes. At about the same time another selling agency was created, a corporation known as the Brown-Kelly Land Company. By this contract the Brown-Kelly Land Company were to undertake the building of the dike, and the clearing, draining and selling of the land, for which they agreed to take in payment stock of the Loamy Land Acres Syndicate as shown by the agreement hereinafter referred to.

The venture was not a financial success as practically no sales were made, and while the Brown-Kelly Land Company did a large amount of diking and clearing and took their pay in the Syndicate stock which they exchanged for land covered by a mortgage, their interest being finally foreclosed, no money came into the Syndicate or to the Troutdale Land Company so as to enable them to pay the other two notes when they became due. In 1912, the Brown-Kelly Land Company

advanced $999 to pay the interest on the other two notes held by Roth and Michel, and in 1913, when the last note fell due and they were unable to meet either the principal or the interest, these foreclosure proceedings were instituted and Brown, being the holder of one of the notes, was made a party plaintiff with the holders of the other two. In its decree the court divided the land into two tracts, number one being the lowland conveyed to the Merchants' Savings & Trust Company, as trustee, and also that part of the land reserved and now owned by the Troutdale Land Company, and number two being the highland, consisting of about 100 acres which were used for houses, barns, corrals, and dairy stables. The latter tract had not been conveyed by the Troutdale Land Company, but was nevertheless covered by plaintiffs' mortgage. It is now owned by defendant Mossi. The defendants Troutdale Land Company and Joseph Mossi appeal.

AFFIRMED.  REHEARING DENIED.

For appellants there was a brief and an oral argument by *Mr. John M. Haddock.*

For respondents there was a brief and an oral argument by *Mr. John H. Hall.*

Mr. Justice Bean delivered the opinion of the court.

Defendants, Troutdale Land Company and Joseph Mossi, contest the right of plaintiff Frank H. Brown to a decree for the amount of the first note of $8,428.75, with interest and attorney's fees, and for $1,116.49, interest on the second and third notes secured by the mortgage, which sums were advanced by Brown to stay an earlier foreclosure of the mortgage. It is the contention of these defendants that this note and amount

of interest was paid on January 6, 1912, by the Syndicate out of a loan to them by Brown and that the note was thereby extinguished. On the other hand, plaintiff Brown claims to have purchased an interest in the notes and mortgage to the amount of $10,214, and asks that the same be foreclosed. The claim of these defendants is based upon the new trust agreement of January 6, 1912, whereby the Syndicate assumed the Roth-Michel mortgage. Plaintiff Frank H. Brown, did not sign this agreement and owned no share in the Syndicate at that time. When he furnished the money to take up the first note and pay the interest on the other two, he was in no way bound to do so. He was not the debtor, and was not liquidating his own debt. It was agreed between plaintiff Brown and the other parties who were about to form the so-called Syndicate that if he would arrange to take up the note and prevent a foreclosure, then they would pay him in addition to the rate provided for in the mortgage 2 per cent interest on the amount making 8 per cent on the sum advanced. In order to evidence this agreement a memorandum or renewal note was authorized by a resolution of the Syndicate to be executed by George N. Davis, manager, for the amount so advanced with interest at 8 per cent. It provided and the evidence plainly shows that it was understood and agreed between Brown and the Troutdale Land Company, the mortgagor, that the note should not be canceled. The resolution recited that it should be held by Brown as collateral security for the Syndicate note. There was only one principal indebtedness evidenced by these two notes.

1-4. The indorsement and transfer by a mortgagee of a promissory note secured by a mortgage carries with it the mortgage security without a formal assign-

ment of the mortgage: 27 Cyc. 1287; *Roberts* v. *Suther-
lin,* 4 Or. 219; *Bamberger* v. *Geiser,* 24 Or. 204 (33 Pac.
609); *Barringer* v. *Loder,* 47 Or. 223, 224 (81 Pac. 778).
The transfer by Roth and Michel to Brown of the three
notes secured by the mortgage and the interest on the
other one of two notes, carried with it the *pro rata*
security of the mortgage securing the same: 27 Cyc.
1289, and note; *Sargent* v. *Howe,* 21 Ill. 148; *Walker* v.
*Schreiber,* 47 Iowa, 529; *Foley* v. *Rose,* 123 Mass. 557;
*Brown* v. *Delaney,* 22 Minn. 349; *Johnson* v. *Brown,* 31
N. H. 405. Brown had an interest in the subject of the
suit and the relief to be obtained and was properly
made a party plaintiff to foreclose the mortgage in
which he held an interest: Section 393, L. O. L. The
mortgage could be foreclosed as security for the three
notes in one suit, and there was no error in overruling
the demurrer interposed to the complaint on account
of a misjoinder of parties or causes of suit.

5. After temporary arrangements had been made
as to the Roth-Michel mortgage Brown furnished sev-
eral thousand dollars to enable the Brown-Kelly Land
Company to clear and dike the land and obtained for
the improvement certificates of shares in the Syndicate
which were exchanged for contracts of purchase of the
land subject to the mortgages. All rights conferred
by such contracts were subsequent and inferior to the
first and second mortgages and have been foreclosed
in this suit. Under such circumstances and according
to the fair agreement between the Troutdale Land
Company people and Brown, good conscience requires
that the lien of the mortgage should be kept alive
*in toto.* Mergers are not favored in equity. In *Wat-
son* v. *Dundee,* 12 Or. 474 (8 Pac. 548), Mr. Justice
LORD said:

"It is only in those cases where it is perfectly indifferent to the party in whom the interests had united whether the charge or term should or should not subsist, that in equity the term is merged. But if the owner has an interest in keeping them distinct, or there is an intervening right, there will be no merger. * * In the absence then of an express intention to the contrary, the intention to keep the two estates separate will be implied and presumed, when it is for the interest of the party that they should be kept separate. It will not do, then, as was said by ELLIOTT, J., to assume, as a matter of course, that there was a merger, for there are many cases in which, in order to prevent injustice, courts will not allow merger to take place, although all the essential elements of a technical merger combine in the particular case."

See *Katz* v. *Obenchain,* 48 Or. 352 (85 Pac. 617, 120 Am. St. Rep. 821); *Fogarty* v. *Hunter,* 83 Or. 183 (162 Pac. 964). Brown, however, obtained his right to an interest in the mortgage security not from the Syndicate but from Roth and Michel. He, therefore, has a kind of partnership interest with the mortgagees in the mortgage and is entitled to have the same foreclosed.

6. Defendants Troutdale Land Company and Mossi pray in their answer that in any decree that may be entered ordering the sale of any land described in the mortgage, it be provided that the tract of land conveyed by the Troutdale Land Company to the defendant Commerce Trust and Savings Bank (formerly the Merchants' Savings & Trust Company) be sold first leaving the remainder of the land covered by the mortgage. Tract No. 1 which was first sold upon execution included a portion of the land the title to which still remained in the Troutdale Land Company, the same never having been conveyed to the trustee. The Troutdale Land Company and Mossi complain because more land was included in the tract than that conveyed to

the trustee.   It appears, however, that the proceeds of the sale of this tract were insufficient to satisfy the judgment of plaintiffs and the sale of Tract No. 2 was necessitated and made; therefore, we see no reason for these defendants to complain upon the ground that there was too much land included in the tract first sold when in fact the amount was not large enough to satisfy the required demand.   It does not appear that the land would have sold to better advantage in smaller tracts.   A second sale should not be ordered.

7. The decree of the lower court properly postponed the lien of plaintiff Brown, including the interest advanced, to that of the other plaintiffs as to the second and third notes, and provided for a large number of liens subsequent to the plaintiffs' mortgage which are not directly involved upon this appeal.

8. It is claimed by counsel for Multnomah County that the decree appealed from is erroneous as affecting some highway.   No appeal was taken by the county and the effect of the decree as to this defendant cannot be considered or changed upon this appeal.   It follows that the decree of the lower court should be affirmed and it is so ordered.

AFFIRMED.   REHEARING DENIED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE MOORE and MR. JUSTICE McCAMANT concur.