**In re Max McNEELY, Debtor.**

**Bankruptcy No. 83C–02990.**

United States Bankruptcy Court,
D. Utah.

July 19, 1985.

Robert L. Neeley, Campbell & Neeley, Ogden, Utah, for debtor.

James Z. Davis, Ray, Quinney & Nebeker, Ogden, Utah, for Western States Petroleum, Inc.

Steven R. Bailey, Ogden, Utah, trustee.

## MEMORANDUM OPINION

GLEN E. CLARK, Bankruptcy Judge.

### CASE SUMMARY

This matter comes before the Court on the motion of Western States Petroleum, Inc. for relief from the automatic stay. For the reasons set forth herein, the Court determines that the creditor's prejudgment writs and garnishments created liens valid against the trustee and the creditor is entitled to relief from the stay.

### FACTS AND PROCEDURAL BACKGROUND

The following facts were stipulated to by the parties to this matter:

Prior to filing of his bankruptcy petition, the debtor held one-half ownership interest in real property in Box Elder County, Utah. Western States Petroleum, Inc. (hereinafter the "creditor" or "movant") commenced an action against the debtor in state court in order to collect a debt of $130,605.27, plus attorney's fees. On April 29, 1983, the creditor caused to be issued a prejudgment writ of attachment, attaching the debtor's real property in Box Elder County, Utah. On that same date, the creditor caused to be issued a prejudgment writ of garnishment directed to the Bear River State Bank, ordering said bank to freeze the funds in the debtor's accounts there pending resolution of the dispute. On May 10, 1983, the creditor caused to be served upon the debtor a prejudgment writ of attachment, attaching the debtor's personal property. On May 10, 1983, the state court entered an order extending the aforesaid writs during the pendency of the lawsuit.

The real and personal property of the debtor, which is the subject of the writs, have a value of less than $75,000. In the state court, the creditor made a motion for

summary judgment against the debtor. On November 8, 1983, the debtor filed a petition for voluntary relief under Chapter 7 of the Bankruptcy Code. On or about that date, the state court ruled on the summary judgment motion and entered judgment in favor of the creditor and against the debtor;[1] it is unclear whether the order for relief entered upon the filing of the Chapter 7 petition or the judgment was entered first. The trustee and the creditor have stipulated that the creditor's interest in the property subject to the prejudgment writs can attach to the proceeds of any of such property that has been sold by the trustee.

In addition to the stipulated facts above, this Court also finds:

On May 10, 1984, the creditor moved this Court for (1) an order terminating the automatic stay as to the property subject to the state court's writs on the ground that the writs created a valid lien against said property, thereby giving the creditor a security interest in such property to the extent of the judgment obtained in state court, and (2) an order transferring its lien on any such property sold by the bankruptcy trustee to the proceeds thereof. On May 18, 1984, the creditor gave notice of the hearing on its motion for relief from stay scheduled for June 14, 1984. On June 4, 1984, the debtor filed his answer pursuant to Local Rule 27, objecting to the creditor's motion and arguing that the state court's prejudgment writs did not create a valid lien in favor of the creditor. On June 14, 1984, the trustee filed a response, arguing that the creditor's summary judgment in state court superseded the prejudgment writs of attachment, and because the creditor failed to perfect its judgment lien, it has only a general unsecured claim without priority against the assets of the bankruptcy estate. On June 14, 1984, the parties filed their stipulation of facts to which the Court has already made reference in these findings.

On June 14, 1984, at 11:00 a.m., the Court held a preliminary hearing on the creditor's motion. Robert Neeley appeared for the debtor, James Davis appeared for the creditor, and Steven Bailey appeared in his capacity as trustee. The Court heard arguments and ordered the parties to file additional memoranda within 15 days, by June 29, 1984. The trustee and the debtor filed their memoranda on July 6. The creditor filed its memorandum on July 11. No party scheduled a final hearing on this motion within 30 days of the date of the preliminary hearing held June 14, 1984, nor did any of the parties make any effort to bring this matter to the Court's attention for final resolution.

The matter remained under advisement until now.

## ANALYSIS

### The Priority of a Lien Acquired by Prejudgment Attachment

■ An attachment is a provisional remedy granted to the plaintiff in an action, which enables him to have property of the defendant seized by an officer and held in the custody of the law as security for the satisfaction of any judgment that he may recover. *Bristol v. Brent,* 36 Utah 108, 103 P. 1076, 1079 (1909); *Jesse v. Birchell,* 198 Or. 393, 257 P.2d 255, 257, 37 A.L.R.2d 952 (1953). When the court determines that the plaintiff is entitled to judgment, "then, and only then, can the property that has been seized be applied to payment of the judgment." *Bristol v. Brent, supra,* 103 P. at 1079. The property attached constitutes security for payment of the debt, if the debt is found to exist. An attachment proceeding is essentially a proceeding for the purpose of establishing a lien to aid in the collection of an unsecured debt, and the only way this lien can be established is by strictly adhering to every

---

1. The Court concludes that the affidavits of Martin V. Gravis, which attempt to impeach the validity of the writs, constitute inadmissible hearsay. Consequently, there is no evidence before this Court of any defect in the prejudgment writs. There is no evidence that the state court found any defects in the prejudgment writs nor in the process that led to the issuance of those writs. Therefore, this Court concludes that the writs were in every respect valid.

requirement of the rule. *Bank of Ephraim v. Davis*, 581 P.2d 1001 (Utah 1978). *See* Rule 64C, Utah R.Civ.P. *Cf. Hilton Brothers Motor Co. v. District Court*, 82 Utah 372, 25 P.2d 595 (1933). When property is levied upon pursuant to a writ of attachment, the plaintiff acquires an inchoate or contingent lien in the property attached. *Jensen v. Eames*, 30 Utah 2d 423, 519 P.2d 236, 238 (1974); *Hilton Brothers Motor Co. v. District Court, supra*, 25 P.2d at 596. The lien acquired by attachment is a vested interest of the attaching creditor, which affords specific security for the satisfaction of the debt. *McGaffey Canning Co. v. Bank of America*, 109 Cal.App. 415, 294 P. 45, 48 (1930). So long as it exists it is a charge on the assets and is not subject to being divested except by order of the court or payment of the judgment sought to be obtained in the underlying action.

■■■■ It is true that upon the rendition and docketing of a judgment in favor of the plaintiff in an action in which a prejudgment writ of attachment has been issued and levied upon real property, the attachment lien merges with the judgment lien in the sense and to the extent that there cannot be two separate and distinct liens subsisting against the same property—one arising out of the attachment, and the other arising out of the judgment. *Brun v. Evans*, 197 Cal. 439, 241 P. 86, 87 (1925). But notwithstanding the merger, the attachment lien continues in existence for the purpose and with the effect of preserving the priority thereby established. *Id.* Or, stated differently, entry of judgment will perfect the inchoate lien and the perfected lien will relate back to the date the writ was levied upon. *See Morris W. Haft & Brothers v. Wells*, 93 F.2d 991, 995 (10th

Cir.1937). An attachment lien continues after the rendition of the judgment until the debt is paid or the property is sold under a writ of execution issued on the judgment, or until the judgment is satisfied, or the attachment discharged or vacated in some manner provided by law. *Katz v. Obenchain*, 48 Or. 352, 85 P. 617, 619 (1906).

■■■ The drafters of the Bankruptcy Code were concerned with the problem of liens created by state law frustrating the policy of equality of distribution among unsecured creditors. *See* 4 COLLIER ON BANKRUPTCY ¶ 545.01[3], at 545–6 through 545–7 (15th ed. 1985). Section 545 of the Code specifies six alternative grounds upon which the trustee can avoid the fixing of a statutory lien. It must, of course, be recognized that Section 545 deals only with statutory liens and does not include judicial liens or security interests.

■■■■ A "judicial lien" is defined in Section 101(30) (formerly Section 101(27)) as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." The term encompasses a lien established by attachment or garnishment. *See In re Rand Mining Co.*, 71 F.Supp. 724 (S.D.Cal.1947); *In re Minton Group, Inc.*, 28 B.R. 774 (Bkrtcy.S.D.N.Y. 1983).[2] A judicial lien, while not subject to avoidance under Section 545, may be assailed as a preference. *See* 4 COLLIER ON BANKRUPTCY, *supra*, ¶ 547.12[1], at 547–48. In the present case, however, the writs were issued and the debtor's property levied upon outside of the preference period. Where a writ of attachment is issued and the debtor's property is levied upon prior to the 90-day preference period, a lien is created in favor of the creditor which

---

**2.** The difference between statutory liens and judicial liens is explained in the legislative history, as follows:

The definition [of statutory liens] excludes judicial liens and security interests, whether or not they are provided for or are dependent on a statute, and whether or not they are made fully effective by statute. A statutory lien is only one that arises automatically, and is not based on an agreement to give a lien or

on judicial action. Mechanics', materialmen's, and warehousemen's liens are examples. Tax liens are also included in the definition of statutory lien.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 314 (1977), 1978 U.S.Code Cong. & Admin.News, p. 6271; S.Rep. No. 95–989, 95th Cong., 2d Sess. 27 (1978), 1978 U.S.Code Cong. & Admin.News, pp. 5812–13.

cannot be avoided by the trustee. *McIntosh v. Bank of Salt Lake*, 24 Utah 2d 245, 469 P.2d 1016, 1018 (1970). *See Walutes v. Baltimore Rigging Company*, 390 F.2d 350, 352 (4th Cir.1968); *Bass v. Stodd*, 357 F.2d 458, 465–66 (9th Cir.1966); *In re TMIC Industrial Cleaning Co.*, 19 B.R. 397, 400 (Bkrtcy.W.D.Mo.1982). A judgment perfecting the lien may be rendered within the preference period or even after the filing of the bankruptcy petition. *Metcalf Brothers & Co. v. Barker*, 187 U.S. 165, 23 S.Ct. 67, 47 L.Ed. 122 (1902); *Morris W. Haft & Brothers v. Wells, supra*, 93 F.2d at 995.

■ The property which is the subject of the writs is property of the debtor's estate. 11 U.S.C. § 541. *See United States v. Whiting Pools*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). However, turnover of such property is proper only where the creditor's interest can be adequately protected. 11 U.S.C. §§ 363(e), 542. *See In re Riding*, 44 B.R. 846, 848–49, 12 B.C.D. 635, 11 C.B.C.2d 859 (Bkrtcy. D.Utah 1984). The facts of this case demonstrate that the debtor cannot provide adequate protection of the creditor's interest.

### *Termination of the Automatic Stay*

The automatic stay may have terminated on July 15, 1984 by reason of the operation of Section 362(e), the applicable version of which provided as follows:

(e) Thirty days after a request under subsection (d) of this section for relief from the stay of any act against property of the estate under subsection (a) of this

section, such stay is terminated with respect to the party in interest making such request, unless the court, after notice and a hearing, orders such stay continued in effect pending, or as a result of, a final hearing and determination under subsection (d) of this section. A hearing under this subsection may be a preliminary hearing, or may be consolidated with the final hearing under subsection (d) of this section. If the hearing under this subsection is a preliminary hearing—

(1) the court shall order such stay so continued if there is a reasonable likelihood that the party opposing relief from such stay will prevail at the final hearing under subsection (d) of this section; and

(2) such final hearing shall be commenced within thirty days after such preliminary hearing.[3]

Bankruptcy Rule 4001(b) provides:

The stay of any act against property of the estate under § 362(a) of the Code expires 30 days after a final hearing is commenced pursuant to § 362(e)(2) unless within that time the court denies the motion for relief from the stay.

Section 362(e) was carefully drafted to assure that relief from stay matters be decided expeditiously. The legislative history underscored this Congressional intent:

Subsection (e) provides a protection for secured creditors that is not available under present law. The subsection sets a time certain within which the bankruptcy court must rule on the adequacy of protection provided of the secured credi-

---

**3.** Minor, nonsubstantive amendments were made to Section 362(e) by Section 441 of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98–353, 98 Stat. 371 (July 10, 1984). As amended, Section 362(e) reads as follows:

(c) Thirty days after a request under subsection (d) of this section for relief from the stay of any act against property of the estate under subsection (a) of this section, such stay is terminated with respect to the party in interest making such request, unless the court, after notice and a hearing, orders such stay continued in effect pending the conclusion of, or as a result of, a final hearing and

determination under subsection (d) of this section. A hearing under this subsection may a preliminary hearing, or may be consolidated with the final hearing under subsection (d) of this section. The court shall order such stay continued in effect pending the conclusion of the final hearing under subsection (d) of this section if there is a reasonable likelihood that the party opposing relief from such stay will prevail at the conclusion of such final hearing. If the hearing under this subsection is a preliminary hearing, then such final hearing shall be commenced not later than thirty days after the conclusion of such preliminary hearing.

tor's interest. If the court does not rule within 30 days from a request for relief from the stay, the stay is automatically terminated with respect to the property in question. In order to accommodate more complex cases, the subsection permits the court to make a preliminary ruling after a preliminary hearing. After a preliminary hearing, the court may continue the stay only if there is a reasonable likelihood that the party opposing relief from the stay will prevail at the final hearing. Because the stay is essentially an injunction, the three stages of the stay may be analogized to the three stages of an injunction. The filing of the petition which gives rise to the automatic stay is similar to a temporary restraining order. The preliminary hearing is similar to the hearing on a preliminary injunction, and the final hearing and order is similar to a permanent injunction. The main difference lies in which party must bring the issue before the court. While in the injunction setting, the party seeking the injunction must prosecute the action, in proceedings for relief from the automatic stay, the enjoined party must move. The difference does not, however, shift the burden of proof. Subsection (g) leaves that burden on the party opposing relief from the stay (that is, on the party seeking continuance of the injunction) on the issue of adequate protection.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 344 (1977).

In this matter, a preliminary hearing on the creditor's motion for relief was held within 30 days of the request therefor. The Court continued the automatic stay for a period of 30 days until the conclusion of the final hearing and also asked that briefs be filed within 15 days, by June 29, 1984. Final briefs were filed on July 11, 1984, only three days prior to the 30-day deadline for holding the final hearing. The creditor failed to schedule a final hearing on the Court's calendar. The 30-day deadline for the final hearing expired on July 15, 1984 and no order continuing the stay was entered.

■ A creditor who fails to schedule a final hearing within the 30-day period may impliedly waive its right to automatic termination under Section 362(e). *See In re Small,* 38 B.R. 143 (Bkrtcy.D.Md.1984); *In re Wilmette Partners,* 34 B.R. 958 (Bkrtcy. N.D.Ill.1983); *Matter of Fairchild,* 30 B.R. 630 (Bkrtcy.S.D.Ohio 1983).

■ Moreover, it cannot be doubted that this Court has the power under Section 105 of the Bankruptcy Code to issue an injunction to, in effect, reinstate the automatic stay following its expiration under Section 362(e). *See In re Rolanco, Inc.,* 43 B.R. 150 (Bkrtcy.E.D.Mo.1984); *In re Small,* 38 B.R. 143, 147–48 (Bkrtcy.D. Md.1984); *In re Wilmette Partners,* 34 B.R. 958, 11 B.C.D. 465 (Bkrtcy.N.D.Ill. 1983); *Spagnol Enterprises, Inc. v. Atlantic Financial Federal Savings Association,* 33 B.R. 129 (D.C.W.D.Pa.1983); *In re Brusich and St. Pedro Jewelers, Inc.,* 28 B.R. 545 (Bkrtcy.E.D.Pa.1983); *In re Prime, Inc.,* 26 B.R. 556 (Bkrtcy.W.D.Mo. 1983); *In re Codesco, Inc.,* 24 B.R. 746, 9 B.C.D. 1100 (Bkrtcy.S.D.N.Y.1982); *In re Durkalec,* 21 B.R. 618 (Bkrtcy.E.D.Pa. 1982); *Matter of QPL Components, Inc.,* 20 B.R. 342 (Bkrtcy.E.D.N.Y.1982); *In re Sandmar Corp.,* 16 B.R. 120 (Bkrtcy.D.N. M.1981); *In re Kleinsasser,* 12 B.R. 452, 7 B.C.D. 1275 (Bkrtcy.D.S.D.1981); *Memphis Bank & Trust Co. v. Brooks,* 10 B.R. 306, 7 B.C.D. 290 (D.C.W.D.Tenn.1981); *In re Fulghum Const. Corp.,* 5 B.R. 53, 6 B.C.D. 661 (Bkrtcy.M.D.Tenn.1980); *In re Walker,* 3 B.R. 213, 6 B.C.D. 161 (Bkrtcy.W.D.Va. 1980); *In re Feimster,* 3 B.R. 11, 6 B.C.D. 131 (Bkrtcy.N.D.Ga.1979). *Contra, In re Wood,* 33 B.R. 320, 11 B.C.D. 111 (Bkrtcy. D.Idaho 1983).

Because of its determination that the creditor has a valid lien against the property levied upon by the prejudgment writs and is entitled to relief from the automatic stay, the Court refrains from deciding whether the stay expired on June 15, 1984, or whether the creditor waived its right to automatic termination under Section 362(e). Given the facts of this case and the applica-

ble state law, the Court would have granted the creditor's motion for relief and ordered termination of the stay in any event.

## CONCLUSION

 Rules 64A, 64C, and 64D of the Utah Rules of Civil Procedure were intended to create a method by which an unsecured creditor, under limited circumstances. and by way of the prejudgment writs issued by the state court, could obtain a valid lien in the attached property of a defendant to the lawsuit in which the writs were issued. A lien thus obtained is superior to the interest of the bankruptcy trustee.

Whether or not judgment was actually rendered by the state court prior to entry of the order for relief does not affect the nature of the creditor's lien acquired pursuant to the writs of attachment. Upon entry of judgment in favor of the plaintiff, the perfected lien relates back to the levy of attachment. The judgment only determines the value of the creditor's interest. In this case, the state court's summary judgment in the sum $130,607.27 exceeds the value of the collateral, which is less than $75,000.

For these reasons, Western States Petroleum, Inc. is entitled to relief from the automatic stay with respect to the property subject to the state court writs and shall have a lien against the proceeds of the sale by the trustee of any such property, subject, of course, to the claims of the holders of any superior liens.