**In re WHEELING–PITTSBURGH STEEL CORPORATION, Debtor.**

**SHAWMUT BANK OF BOSTON, N.A., and the United States of America on behalf of its agency the Economic Development Administration of the Department of Commerce, Appellants,**

v.

**WHEELING–PITTSBURGH STEEL CORPORATION, Appellee.**

Civ. A. Nos. 86–902, 86–1201.
Bankruptcy No. 85–793.

United States District Court,
W.D. Pennsylvania.

Nov. 26, 1986.

Judith K. Giltenboth, Asst. U.S. Atty., Dean Cooper, Dept. of Justice, Civ. Div., William Allen Ogden, Office of Chief Counsel, Economic Development Admin., Washington, D.C., for E.D.A.

Sidney R. Finkel, Baskin, Flaherty, Elliott, Mannino, Pittsburgh, Pa., for Shawmut Bank of Boston, N.A.

M. Bruce McCullough, Pittsburgh, Pa., Ronald S. Orr, Gibson, Dunn & Crutcher, Los Angeles, Cal., for Wheeling-Pitt.

Robert G. Sable, Lampl, Sable & Makoroff, Francis P. Mosco, Pittsburgh, Pa., Lawrence M. Handelsman, Stroock, Stroock & Lavan, New York City, for Unsecured Creditors.

## OPINION

COHILL, Chief Judge.

### I. FACTS

This is an appeal from one facet of the proceedings stemming from the Chapter 11 voluntary bankruptcy petition filed by Wheeling-Pittsburgh Steel Corporation ("Wheeling-Pitt") on April 16, 1985. At stake is the status of secured debt issued to finance Wheeling-Pitt's acquisition and construction of a rail mill facility at Monessen, Pennsylvania.

Shortly after Wheeling-Pitt filed for bankruptcy, the United States Economic Development Administration (the "EDA") was compelled by the terms of a Guaranty Agreement to repay holders of certain secured notes, which were in default as of December 1, 1984. The notes in question had been issued by Wheeling-Pitt to finance its rail mill facility at Monessen, in a total principal amount of $63,500,000, and designated as 11% Senior Secured Series "A" Notes (the "Series "A" Notes"). The Series "A" Notes were secured by a mortgage lien and a security interest in the Monessen facility. Ninety percent of the Series "A" Notes were guaranteed by the EDA pursuant to the Guaranty Agreement; the rest were not. The EDA succeeded to the rights of those holders which it reimbursed under the terms of the Guaranty Agreement. Shawmut Bank is Indenture Trustee for all holders of the Series "A" Notes (including the EDA), and in that capacity has the power to pursue remedies on the defaulted notes at the direction of two-thirds of those holders. Since the EDA currently holds the bulk of the Series "A" Notes, Shawmut is acting at the behest of the EDA.

The Pennsylvania Industrial Development Authority (the "PIDA") also holds a security interest in the Monessen facility. Wheeling-Pitt is also in default with respect to the PIDA loan. PIDA claims that its secured debt is more than $9,100,000 as of January 7, 1986. Both the EDA and Wheeling-Pitt maintain that PIDA's interest is junior to that of the holders of Series "A" Notes.

### II. PROCEDURAL HISTORY

Wheeling-Pitt's bankruptcy petition operated to impose an automatic stay on its creditors' attempts to enforce their security interests. See 11 U.S.C. § 362(a). Under the bankruptcy statute, an automatic stay is effective as soon as a Chapter 11 petition is filed. *Id.* A creditor may request the

bankruptcy court to grant appropriate individual relief from the automatic stay.[1] The automatic stay terminates thirty days after the request with respect to the party which requested relief unless the bankruptcy court orders the stay continued after notice and a hearing. The hearing may be either preliminary or final. If it is a preliminary hearing, a final hearing must be "commenced not later than thirty days after the conclusion of such preliminary hearing." 11 U.S.C. § 362(e). Finally, Bankruptcy Rule 4001(b) provides that "[t]he stay of any act against property of the estate under § 362(a) of the Code expires 30 days after a final hearing is commenced pursuant to § 362(e)(2) unless within that time the court denies the motion for relief from the stay."

Both the PIDA and the EDA filed § 362(d) motions for relief from the automatic stay. The PIDA filed on January 10, 1986 and the United States filed on behalf of the EDA on February 4, 1986. Discovery commenced, with supervision from the bankruptcy court. While these motions were pending, Wheeling-Pitt filed a motion proposing an "Administrative Procedure For The Orderly Handling and Disposition Of Requests For Relief From Stay Or Adequate Protection."

The bankruptcy court held a preliminary hearing on the EDA and PIDA motions on March 10, 1986. On that date the bankruptcy court issued an order continuing the automatic stay pending final hearings, since it found that there was a reasonable likelihood that Wheeling-Pitt would eventually prevail on the merits. Wheeling-Pitt moved that the bankruptcy court deny the requests for relief from the automatic stay on April 29, 1986. On May 1, 1986, Shawmut commenced mortgage foreclosure proceedings in this court at the direction of EDA. Wheeling-Pitt responded with a request for a temporary restraining order, injunctive relief, and an allegation that EDA was in contempt of court. This court referred the mortgage foreclosure action back to the bankruptcy court, which entered an order (the "May 16 Order") continuing the foreclosure action indefinitely and set a schedule for resolution of the various motions.

In these actions, Shawmut has requested this court to reconsider its order referring the mortgage foreclosure action to the bankruptcy court (Civil Action No. 86–902), and has appealed the order of the bankruptcy court continuing the mortgage foreclosure action indefinitely (Civil Action No. 86–1201). The bankruptcy court has in the meantime cancelled further proceedings pending resolution of the issues before this court.

Shawmut maintains that the automatic stay expired prior to its initiation of the foreclosure action. Its interpretation is that the automatic stay expired mechanically 90 days after its motion was filed, on either April 7 or April 9, 1986, because the bankruptcy court had not entered a final order. Therefore, Shawmut argues that it is free to foreclose on the Monessen facility. As to the May 16 Order, Shawmut argues that it is ineffective to cure expiration of the automatic stay because it fails to meet the requirements set out in *Spagnol Enterprises v. Atlantic Financial Federal Savings Ass'n*, 33 B.R. 129, 130 (W.D.Pa.1983). However, Shawmut argues that the May 16 Order is appealable, either because it is a final order or as an interlocutory appeal.

Wheeling-Pitt contends that the automatic stay never expired and is still in effect. Wheeling-Pitt's position on the May 16 Order is that it is not appealable as a final

---

**1.** On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

  (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

  (2) with respect to a stay of an act against property under subsection (a) of this section, if—

    (A) the debtor does not have an equity in such property; and

    (B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d).

order, nor is it appealable on an interlocutory basis.

### III. ANALYSIS

The bankruptcy code contains a number of provisions designed to ensure that property necessary to an effective Chapter 11 reorganization remains in the debtor's estate. First, an automatic stay is imposed. In theory, the automatic stay cannot be removed without the approval of the bankruptcy court, because the court is directed to retain the property in the estate unless the specific conditions of § 362(d) are satisfied. Time limits are imposed upon the bankruptcy court's determination of whether the automatic stay should be continued, in the interests of an orderly administration of the estate and to protect creditors. However, it is clear that the time limits were not intended to mindlessly deprive the estate of assets necessary for an effective reorganization.

A bankruptcy of the magnitude of the Wheeling-Pitt reorganization presents substantial, sometimes overwhelming, administrative challenges to the bankruptcy court. The court must field numerous motions from an unending succession of creditors, and an occasional missed deadline is an entirely understandable occurrence. There is widespread agreement that the loss of crucial assets as a result of inadvertent lapses of the automatic stay is not a satisfactory result. The broad injunctive powers of § 105(b) have frequently been invoked to avert this result. In *Spagnol Enterprises v. Atlantic Financial Federal Savings Ass'n*, 33 B.R. 129, 130 (W.D.Pa. 1983), Judge Weber of this court held that the broad injunctive power granted to the bankruptcy court in § 105(a) of the bankruptcy code empowers the court "to cure expiration of the automatic stay." *See also Matter of Kozak Farms, Inc.*, 47 B.R. 399, 402–03 (W.D.Mo.1985); cases cited at *In re McNeely*, 51 B.R. 816, 821 (Bkrtcy.D. Utah 1985). Shawmut cites *Spagnol* as

support for its contention that the stay mechanically expired by operation of law on either April 7 or April 9. However, Shawmut overlooks the fundamental holding of *Spagnol;* section 105(b) of the bankruptcy code gives the bankruptcy court the broad equitable power to correct inadvertent lapses of the automatic stay. *Spagnol*, 33 B.R. at 130–31.

In *Spagnol*, the district court found that, although the bankruptcy court had the power to issue an injunction curing an inadvertent lapse of the automatic stay, the bankruptcy court had not developed a proper record pursuant to issuing an injunction. The district court remanded to the bankruptcy court for further proceedings. *Id.* at 131. This case is remarkably similar. Any lapse of the automatic stay in this case was "entirely inadvertent," as the bankruptcy judge has explicitly stated. *See* Transcript of Hearing of May 5, 1986, at 20. Therefore, the bankruptcy court has the power to issue an injunction to cure this lapse.

We note in passing that the bankruptcy court was under the impression that counsel for the EDA and Shawmut had consented to delay the final hearing. Although they did repeatedly ask the court for prompt and expeditious resolution, counsel apparently never advised the court of the precise dates of the applicable deadlines.[2] There is some authority for the proposition that "[a] creditor who fails to schedule a final hearing within the 30–day period may impliedly waive its right to automatic termination under Section 362(e). [citations omitted]" *In re McNeely*, 51 B.R. 816, 821 (Bkrtcy.D.Utah 1985) (the *creditor* had "failed to schedule a final hearing on the Court's calendar"). However, we do not find it necessary to reach the issue of waiver.

We find that the May 16 Order is effectively an injunction, issued in an at-

---

**2.** Counsel also apparently did not explicitly advise the court of its view of the mechanical operation of these deadlines. *See* Transcript of Hearing of May 5, 1986, at 20; Transcript of

Testimony of April 7, 1986, regarding Motion To Set Forth Administrative Procedure For The Handling And Disposition Or Requests For Relief From Stay Or Adequate Protection.

tempt to cure expiration of the automatic stay. We reach this conclusion because the record indicates that the bankruptcy court relied on its § 105 injunctive powers.[3] Even Shawmut argues in its brief that "[t]he Bankruptcy Court's stay of the Mortgage Foreclosure Action and its indefinite extension of the automatic stay..... are in effect an injunction."[4] The bankruptcy court's order continuing the mortgage foreclosure action demonstrates that EDA has thus far failed to convince the bankruptcy court that the Monessen facility is not necessary to an effective reorganization. We acknowledged as much when we referred the mortgage foreclosure action back to the bankruptcy court. Indeed, we would be unable to affirm a lifting of the stay on the present record, as there is no indication that the prerequisite conditions of § 362(d) are satisfied.

■ The Third Circuit Court of Appeals has stated that "a bankruptcy judge's denial of relief from the automatic stay is a final order appealable under section 1334(a)." *In re Comer*, 716 F.2d 168, 174 (3d Cir.1983); *see also Grundy Nat. Bank v. Tandem Min. Corp.*, 754 F.2d 1436, 1439 (7th Cir.1985); *In re American Mariner Industries, Inc.*, 734 F.2d 426, 429 (9th Cir.1984); *In re Taddeo*, 685 F.2d 24, 26 n. 4 (1st Cir.1982); *In re Sun Valley Foods Co.*, 801 F.2d 186, 190 (6th Cir.1986) (holding that a *lifting* of the automatic stay is also a final appealable order). The Third Circuit Court has taken a pragmatic approach to the issue of finality in bankruptcy appeals. *Christian v. Union Chelsea Bank*, 804 F.2d 46, 47 (3d Cir.1986). As the Court pointed out in the *Comer* case, appealability as a matter of right protects creditors. If denials of relief from the automatic stay are not appealable, creditors might be left in the uncomfortable position of being unable to appeal erroneous findings by the bankruptcy court, while

in effect underwriting the debtor's reorganization at the creditor's expense. *Comer*, 716 F.2d at 174. Accordingly, we find that this injunction, issued to cure expiration of the automatic stay, must also be appealable as a final order. Such an injunction has the same effect as an order continuing the automatic stay, and ought to be governed by the same standards of appellate review. Indeed, the *Spagnol* opinion implicitly assumes that such injunctions are appealable. *Spagnol*, 33 B.R. at 131. We note that, even if an injunction curing expiration of the automatic stay were not appealable as a final order, it would be appealable on an interlocutory basis at the discretion of this court. *See* 28 U.S.C. § 158(a); *In re Leonetti*, 28 B.R. 1003, 1007–08 (E.D.Pa.1983); *In re Fleet Headquarters, Inc.*, 69 B.R. 119 (N.D.Ill.1982).

■ Although we hold that the May 16 Order is an appealable injunction, we also find that here, as in *Spagnol*, the bankruptcy court has not provided an adequate record for issuance of an injunction. As the district court noted in *Spagnol*, "[i]ntelligent appellate review requires a properly developed record and some stated rationale for the lower court's action." *Spagnol*, 33 B.R. at 131 (citing Rules 765 and 752 of the Federal Rules of Bankruptcy Procedure). The lack of an adequate record seems due in part to indecision by Wheeling-Pitt during the early phases of this litigation. *See* Transcript of Hearing of May 5, 1986, at 24. Indeed, Wheeling-Pitt continues to send ambiguous signals concerning its commitment to the Monessen facility. Although both Wheeling-Pitt and the bankruptcy court are understandably burdened by the complexity of these proceedings, the Monessen facility may not indefinitely remain in the estate without specific findings of fact and conclusions of law. Therefore,

---

3. *See* Transcript of Testimony of April 7, 1986, regarding Motion To Set Forth Administrative Procedure For The Handling And Disposition Or Requests For Relief From Stay Or Adequate Protection, at 34–35.

4. Joint Brief in Support of Appeals Taken by Shawmut Bank of Boston, N.A., and Economic Development Administration from the Order of May 16, 1986 (Docketed May 19, 1986) of the United States Bankruptcy Court for the Western District of Pennsylvania, at 12.

740

the bankruptcy court should expedite its handling of further proceedings in this matter.

When the bankruptcy court makes its findings of fact and conclusions of law, it should take special note of the fact that Wheeling-Pitt has been less than diligent in its duty to provide justification for retaining the Monessen facility in the estate, and has in fact shown some willingness to allow the EDA to repossess the facility. The bankruptcy court should not hesitate to remove its injunction if the factual findings do not support continuance.

We note, parenthetically, that there has been a great deal of interest in the outcome of this particular phase of the Wheeling-Pitt bankruptcy proceeding. The EDA is not just a creditor; it represents the government of the United States in a broad sense, and because of this should consider policy factors which are, themselves, broader than the interests of a purely commercial creditor.

This case will be remanded to the bankruptcy court so that it can develop an adequate record. An appropriate order will be entered.

### ORDER

AND NOW, to wit, this 26th day of November, 1986, it is hereby ORDERED, ADJUDGED, AND DECREED, that this matter be remanded to the bankruptcy court for further proceedings consistent with this opinion. Appellants' motion to reconsider the referral of the mortgage foreclosure action back to the Bankruptcy Court is granted to the extent that we have reconsidered and see *no reason* to vacate that referral.