In re ML BARGE POOL VII PARTNERS—SERIES A, f/k/a ML Barge Pool VII Partners, Debtor.

UNITED STATES of America, Appellant,

v.

ML BARGE POOL VII PARTNERS—SERIES A, Appellee.

No. 87-0870C(6).

United States District Court, E.D. Missouri.

April 28, 1989.

Fred Dana, Asst. U.S. Atty., St. Louis, Mo., for appellant, U.S.

John D. Evans, Jr., Peper, Martin, Jensen, Maichel & Hetlage, St. Louis, Mo., for appellee, ML Barge.

## MEMORANDUM AND ORDER

GUNN, District Judge.

This case is presently before the Court on the appeal of the United States Department of Transportation Maritime Administration ("Marad") from an order of the United States Bankruptcy Court for the Eastern District of Missouri, 71 B.R. 161 (Bankr.E.D.Mo.1987).[1] On March 11, 1987, the bankruptcy court granted the motion of the debtor, ML Barge Pool VII Partners—Series A ("ML Barge"), requesting the Court to enjoin a pending foreclosure sale of its barges. For the following reasons, the Court affirms the bankruptcy court's order.

As briefly as possible, the facts of this case are as follows.

Marad guaranteed the financing of ML Barge's bonds pursuant to the provisions of Title XI of the Merchant Marine Act, 1936, 46 U.S.C.App. § 1271, *et seq.* In return, ML Barge conveyed to Marad a security interest in ML Barge's fleet of fifty river barges.

ML Barge defaulted on its bonds. As a result, Marad paid approximately $8,750,-

---

1. The Honorable David P. McDonald, United States Bankruptcy Judge for the Eastern District of Missouri.

291 under the terms of its guarantee. ML Barge then began to transfer its barges to Marad at Guntersville, Alabama. Marad thereupon instituted foreclosure proceedings on the barges in Alabama District Court, and a foreclosure sale was scheduled.

Prior to the sale, ML Barge filed a voluntary Chapter 11 petition in the Bankruptcy Court for the Eastern District of Missouri. Pursuant to the automatic stay provision of the Code, 11 U.S.C. § 362(a), the foreclosure sale was thereby automatically stayed. However, in accordance with a newly enacted exception to § 362(a), the stay would automatically terminate with regard to the foreclosure sale 90 days after the filing of the bankruptcy petition. Under section 105(a) of the Code, the "bankruptcy court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Thus, pursuant to section 105(a), ML Barge sought an extension of the stay beyond the 90–day period until the bankruptcy court either approved or disapproved ML Barge's reorganization plan.

ML Barge's only secured creditor is Marad. ML Barge has total assets of less than $100 in cash and its fleet of 50 barges having worth between $3.5 and $4.5 million. As of the date of its bankruptcy petition, ML Barge owed Marad over $9 million in principal and interest. In addition, ML Barge owed approximately $12,000 to unsecured creditors. Under the terms of its reorganization plan, ML Barge would pay its total debt to Marad within 18–19 years, as well as paying the unsecured creditors.

The bankruptcy court found that if the barges were sold at foreclosure ML Barge would be unable to reorganize. Further, neither ML Barge's general creditors nor its equity security holders would realize anything from the estate. Thus, the court found, "the Debtor and its unsecured creditors and equity security holders will be irreparably harmed." 71 B.R. at 164. In addition, the Court found that it "may well be able to confirm Debtor's Plan of Reor-ganization," 71 B.R. at 164, thereby allowing Marad to be paid the amount of its claim, the unsecured creditors to recover 85 per cent of the amount of their claims and equity security holders to retain their interest in the reorganized debtor. Applying the standard for issuing preliminary injunctive relief set forth in *Dataphase Systems, Inc. v. C.L. Systems, Inc.,* 640 F.2d 109 (8th Cir.1981), the bankruptcy court found that ML Barge was entitled to reimposition of the stay.

This Court may not overturn the bankruptcy court's findings of fact unless they are clearly erroneous. Bankr.R. 8013. The district court must review *de novo,* however, the bankruptcy court's conclusions of law. *In re Martin,* 761 F.2d 472, 474 (8th Cir.1985). Injunctions under 11 U.S.C. § 105(a) extending the automatic stay are appealable as final orders. *In re Wheeling–Pittsburgh Steel Co.,* 67 B.R. 735 (W.D.Pa.1986).

Marad raises two issues on appeal. Does Congress' addition of section 362(b)(12) to the list of actions excepted from the automatic stay preclude the bankruptcy court from extending or reimposing the stay under section 105(a) of the Code? If not, in applying the *Dataphase* standard for preliminary injunctive relief, did the bankruptcy court abuse its discretion by considering the likelihood of a confirmation of the reorganization plan as indicative of a likelihood of success on the merits?

## I. Reimposition of the Stay Under Section 105(a)

As the Eighth Circuit has held, the purpose of the bankruptcy code's automatic stay provision "is to give the debtor a 'breathing spell' from his creditors, and also, to protect creditors by preventing a race for the debtor's assets." *Matter of Commonwealth Oil Refining Co.,* 805 F.2d 1175, 1182 (8th Cir.1986). Congress did, however, set forth several exceptions to the automatic stay in section 362(b) of the Code wherein, with regard to specific types of actions, the stay either does not apply at all or automatically terminates within a certain time period.

In section 362(b)(12), Congress provided the latter type of exception for foreclosure proceedings involving Chapter 11 debtors and the Department of Transportation pursuant to the Ship Mortgage Act. The stay does operate automatically upon the filing of the bankruptcy petition but terminates without the requirement that Marad come forward and request relief from the stay.

■ The parties correctly note that there is little case law regarding the interplay between section 105(a) and section 362(b)(12). Nevertheless, the courts have frequently addressed the availability to a debtor of a section 105(a) order continuing or reimposing the automatic stay with regard to exceptions to the automatic stay. The courts have relied upon the legislative history to section 362(b) to conclude "[t]he effect of an exception [to the automatic stay] is not to make the action immune from injunction." *Commonwealth Oil*, 805 F.2d at 1188 n. 16. The Court finds this language most persuasive. Moreover, by plain language, section 362(b)(12) does not preclude the bankruptcy court's consideration of an extension of the stay. The section merely relieves the government's need to come forward and petition the court to lift the stay. The legislative history of the section states:

> By excepting an act or action from the automatic stay, the bill simply requires that the trustee [or debtor, in a Chapter 11 proceeding] move the court into action, rather than requiring the stayed party to request relief from the stay. .... Thus, the court will have to determine on a case-by-case basis whether a particular action which may be harming the estate should be stayed.

*Id.*

For the foregoing reasons, the Court finds that the bankruptcy court's use of its section 105(a) equitable powers to reimpose the stay on an excepted action was proper under the Code.

## II. Application of the *Dataphase* Factors

■ Both parties agree that the factors enumerated in *Dataphase* are the factors to be considered by a bankruptcy court in determining whether to extend or reimpose the stay. *Matter of Commonwealth Oil Refining Co.*, 805 F.2d 1175, 1188 n. 16 (8th Cir.1986); *NLRB v. Superior Forwarding, Inc.*, 762 F.2d 695, 699 n. 3 (8th Cir.1985). The parties disagree as to whether the "merits" upon which ML Barge is likely to succeed are properly identified as the likelihood of the bankruptcy court's confirmation of ML Barge's plan of reorganization.

Marad places heavy reliance upon *Commonwealth Oil*. But that case is inapposite to the factual scenario currently before the Court, however. In *Commonwealth Oil*, the Chapter 11 debtor sought an injunction prohibiting the Environmental Protection Agency from proceeding with an underlying enforcement action concerning the debtor's failure to comply with federal environmental regulatory statutes. The *Commonwealth Oil* court noted that the bankruptcy court had not addressed the issue of success on the merits, but rather had taken that issue as conceded, because the debtor had not disputed its failure to comply with federal environmental statutes. Moreover, Commonwealth Oil Refining Co. contended that a "balancing of the equities" approach, rather than an application of the *Dataphase* factors, mandated a stay of the EPA action. 805 F.2d at 1189, 1189 n. 18.

While Marad correctly argues that "[t]he inquiry for a preliminary injunction necessarily focuses on the outcome of a later proceeding," 805 F.2d at 1189, in this case the pivotal "later proceeding" is the bankruptcy court's determination as to the acceptability of ML Barge's plan of reorganization. The foreclosure sale which Marad seems to want to target as the "later proceeding" is not an adversary proceeding. Therefore, no "likelihood of success on the merits" obtains with regard to the sale. Precisely, the sale will either be able to go forward or it will not. If the plan is confirmed, Marad's foreclosure sale will be impermissible; instead of obtaining an immediate liquidation, they will have to abide by the payment schedule in the plan. Under this circumstance, the Court cannot

find that the bankruptcy court abused its discretion by considering the likelihood of confirmation of the plan as the "merits" upon which ML Barge may succeed in making its decision as to reimposition of the stay.

Therefore, for all the above reasons,

IT IS HEREBY ORDERED that the bankruptcy court's order granting ML Barge's motion for a stay of Marad's foreclosure sale be and it is affirmed.